**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel Ceballos Padilla,<br><br>Plaintiff,<br><br>v.<br><br>Merrick Garland, et al.,<br><br>Defendants. | No. CV-24-00332-TUC-JCH<br><br>**ORDER** |

Pro se Plaintiff Manuel Ceballos Padilla has filed a five-count civil complaint under the Administrative Procedure Act ("APA"). Plaintiff has sued U.S. Attorney General Merrick Garland, United States Customs and Immigration Service ("USCIS") Director Ur Jaddou, USCIS Parole Operations Director Jessica Leigh, USCIS Vermont Service Center Director Laura Zuchowski, USCIS Nebraska Service Center Director Loren Miller, USCIS Service Center Operations Director Connie Nolan, USCIS Associate Director Ted Kim, Secretary of Homeland Security Alejandro Mayorkas, USCIS Ombudsman Nathan Stiefel, Virginia Staab of the U.S. Consul in Nogales, Mexico, and U.S. Department of State Director of Foreign Assistance Dr. Tracy Carson, each in their official capacities. Doc. 1 at 4–6. Plaintiff as also filed an Application for Leave to Proceed in Forma Pauperis. Doc. 2.

The complaint succeeds in stating a claim against Defendants Garland, Jaddou, and Mayorkas in Counts One and Two. For the reasons set forth below, the Court will dismiss all other defendants and counts without prejudice. The Court will also grant Plaintiff's

Application for Leave to Proceed In Forma Pauperis.

**I.      Application for Leave to Proceed In Forma Pauperis**

In his Application for Leave to Proceed in Forma Pauperis, Plaintiff asserts that he cannot pay the filing costs because he has been unemployed and without income since October 2023. *See* Doc. 2 at 2.[1] Plaintiff also asserts that he has no bank account, assets, or living expenses and has received no gift, disability, public assistance, retirement, or any "other" income in the past twelve months. *See id.* at 1–4. Plaintiff attaches what appears to be an online banking interface screenshot showing no money in any account, and he mailed his Application and typed Complaint from an apartment in Mexico City using DHL express mail. *See id.* at 6; Doc. 1-1.

Despite some inconsistencies in Plaintiff's Application, the Court is persuaded overall that Plaintiff cannot afford the costs associated with filing suit. The Court will exercise its discretion to grant Plaintiff *in forma pauperis* status.

**II.     Legal Background**

   **A. Statutory Screening of In Forma Pauperis Complaints**

The Court must screen *in forma pauperis* complaints and dismiss the case if the court determines that the action "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). The Court must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se litigant] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). However, "liberally construing" a complaint does not mean that it need not comply with the Federal Rules of Civil Procedure. In particular, two important rules apply.

First, all complaints must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] His reported former monthly income was roughly half the filing costs. *See id.*

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Second, all complaints "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

If the Court determines that deficiencies in a complaint could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc).

**B. The U-Visa Program**

Many of Plaintiff's allegations refer to the U-visa program. The U-visa program provides certain protections and privileges to noncitizen victims of serious crime who cooperate with law enforcement. *See* 8 U.S.C. § 1101(a)(15)(U) (eligibility criteria); 8 U.S.C. § 1184(p) (petitioning procedures, agency duties and authority, and a statutory cap of 10,000 U-visas per year). The U-visa program is administered by U.S. Citizenship and Immigration Services ("USCIS"), which has promulgated regulations governing U-visa conferral. *See generally* 8 C.F.R. § 214.14.

To receive a U-visa, an alien first files a petition (Form I-918) with USCIS. *See* 8 C.F.R. § 214.14(c)(1); 8 U.S.C. § 1101(a)(15)(U)(i). These petitions are reviewed either at the USCIS Vermont Service Center or the Nebraska Service Center.[2]

USCIS then determines the alien's eligibility. *See* 8 U.S.C. §§ 1101(a)(15)(U)(i)(I)–(IV) (eligibility criteria); *see also* § 1101(a)(15)(U)(iii) (listing covered offenses). Eligible aliens must also be generally admissible or obtain a discretionary waiver of inadmissibility from USCIS. *See* 8 U.S.C. § 1182(a) (classes of inadmissibility); 8 C.F.R. § 214.1(a)(3)(i);

---

[2] *See I-918, Petition for U Nonimmigrant Status*, USCIS, https://www.uscis.gov/I-918 (July 26, 2024).

- 3 -

8 C.F.R. § 214.14(c)(2)(iv); *see also* 8 U.S.C. § 1182(d)(3)(A), (d)(14); 8 C.F.R. § 212.17.

Next, if USCIS determines the alien is eligible, it will approve the petition and grant U-1 nonimmigrant status. 8 C.F.R. § 214.14(c)(5)(i). However, a U-visa will not be issued if the 10,000 annual U-visa statutory cap has been reached. *See* 8 C.F.R. § 214.14(d)(1).

If the cap has been reached—which is common, given the vast number of U-visa applications annually—USCIS must place an eligible petitioner denied solely because of the cap on a waitlist. 8 C.F.R. § 214.14(d)(2) ("the oldest petitions receiving the highest priority," subject to some exceptions).[3] Once on the waitlist, a petitioner is granted deferred action, but "USCIS, in its discretion, may authorize employment." 8 C.F.R. § 214.14(d)(2); *see also* 8 U.S.C. § 1184(p)(6) (authorizing USCIS to grant work authorization to "any alien who has a pending, bona fide application" for a U-visa).

The USCIS website provides estimated processing times for each of its forms.[4] This feature states that currently 80% of Form I-918 petitions take 57 months from receipt of the petition to issuance of either a Bona Fide Determination decision or a notice that the petition will be considered for the waitlist. *See id.*

Many of Plaintiff's allegations also refer to USCIS Form I-131. Form I-131 is an "Application for Travel Document" and may be used to apply for an advance parole document, among other things.[5] An advance parole document permits travel into the United

---

[3] *See also Form I-918 Petitions for U Nonimmigrant Status by Fiscal Year*, USCIS, https://www.uscis.gov/sites/default/files/document/reports/I918u_visastatistics_fy2022_qtr1.pdf (Feb. 2022) (showing more than 285,000 pending applications as of 2021).

[4] *See Check Case Processing Times*, USCIS, https://egov.uscis.gov/processing-times/ (last visited Aug. 29, 2024).

[5] The Court takes judicial notice of Form I-131 and its Instructions. *See I-131, Application for Travel Document*, USCIS, https://www.uscis.gov/i-131 (Aug. 19, 2024). The Court may judicially notice facts "not subject to reasonable dispute," Fed. R. Evid. 201, and documents incorporated by reference in the complaint, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Facts are "not subject to reasonable dispute" if they are "generally known," Fed. R. Evid. 201(b)(1)–(2), such as "matters of public record." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citation omitted). Documents are incorporated by reference if the complaint refers to them "extensively." *Id.* at 1002. Form I-131 and its instructions are publicly available, and the Complaint refers to them extensively.

- 4 -

States for noncitizens in the process of applying for immigrant visas.[6]

## III. Facts Alleged in the Complaint

Liberally construed, the Complaint alleges the following:

Plaintiff is a native and citizen of Mexico, and currently resides in Mexico. Doc. 1 ¶ 8. At some point in the past, Plaintiff cooperated with Arizona law enforcement in the investigation of his own sexual abuse. *See* Doc. 1 ¶ 2.

In January 2018, U.S. Immigration and Customs Enforcement ("ICE") denied Plaintiff's application for humanitarian parole because "Humanitarian Parole is not the proper mechanism to be utilized in [Plaintiff's] case." *See* Doc. 1 at 28.[7]

In April 2018, the United States Citizenship and Immigration Services ("USCIS") determined that Plaintiff was *prima facie* eligible for "U nonimmigrant" classification. *See* Doc. 1 at 11.[8] The Complaint does not say whether Plaintiff ever received "U nonimmigrant" classification, or what became of the *prima facie* determination. Part of the Complaint implies that Plaintiff's "U nonimmigrant" petition is still pending. *See id.* ¶ 71. But that allegation is mostly unconnected to the rest of the Complaint (in fact, Counts Three and Four appear to be copy-pasted from another filing). *Compare id.* at 31–32, *with id.* at 30, 33. Most of the Complaint is instead focused on the following issues Plaintiff had in attempting to get authorization to travel back to the United States.

In November 2020, Plaintiff filed a Form I-131 with USCIS requesting an advance parole document. *See* Doc. 1 ¶¶ 2, 8, 34. In his Form I-131, Plaintiff elected to receive his travel document, when it issued, at the United States Consulate in Nogales, Mexico,

---

[6] *See Advance Parole*, USCBP, *https*://www.cbp.gov/travel/us-citizens/advance-parole (Mar. 5, 2024).

[7] The Court includes this information for clarity only. It is improperly alleged in a letter attached to the Complaint. If Plaintiff wants the Court to consider this information to evaluate his claim, he must include it in an allegation along with the other allegations.

[8] The Court includes this information for clarity only. It is improperly alleged in a letter attached to the Complaint. If Plaintiff wants the Court to consider this information to evaluate his claim, he must include it in an allegation along with the other allegations. The Court notes ICE may request USCIS *prima facie* adjudication if a person is subject to removal proceedings at the time. *See* Doc. 1 ¶ 30.

because he had "no safer address to [receive] such [an] important document." *Id.* ¶ 36. This election is "a valid option," *id.* ¶¶ 18, 38, permitted by and within Form I-131. *See id.* ¶¶ 18 (Form I-131 "offers" this option), 36 (Plaintiff chose the consulate "inside the form I-131"), 39 (implying that Form I-131 permits Plaintiff's election).[9]

In May 2021, USCIS approved Plaintiff's application and told Plaintiff that his travel document "was produced," Doc. 1 ¶ 35, and "was mailed." *Id.* ¶ 43. But when Plaintiff went to the U.S. Consulate with his approved Form I-131, he was disappointed. *See id.* ¶¶ 37–45. Someone at the Consulate—presumably Defendant Staab—told Plaintiff that using the Consulate address for personal mail was inappropriate. *See id.* ¶ 38. Plaintiff concluded that Staab was not familiar with Form I-131. *See id.* ¶¶ 38–39. Plaintiff was then sent back and forth between the Consulate and U.S. Customs and Border Protection ("CBP") at the DeConcini Port of Entry. *Id.* ¶ 40. He never received his travel document, *id.* ¶ 41, and because USCIS never provided a tracking number, he believes it was never mailed. *See id.* ¶¶ 44, 45. Plaintiff "request[ed] a copy several times not only [from] USCIS, [but also] the U.S. Department of State, [and] U.S. Customs and Border Protection," but received no answer. *See id.* ¶ 65.

In October 2021, Plaintiff applied for asylum with USCIS. Doc. 1 ¶ 78. This allegation appears to be unrelated to the rest of the Complaint's allegations. *Compare id.* at

---

[9] Plaintiff's allegations conflict somewhat with Form I-131 and its instructions. The Form I-131 section dedicated to "Processing Information" does ask whether an applicant wants their travel document sent to a U.S. address or "[t]o a U.S. Embassy or Consulate at: [blank for address]." *Application for Travel Document (Form I-131)*, USCIS 3, https://www.uscis.gov/sites/default/files/document/forms/i-131.pdf (Apr. 1, 2024). But the Consulate option appears to be for Reentry Permits and Refugee travel documents only. *See Form I-131* at 2 ¶¶ 1.a, 1.c, 4.a; *Instructions for Application for Travel Document (Form I-131 Instructions)*, USCIS 2, https://www.uscis.gov/sites/default/files/document/forms/i-131instr.pdf (Apr. 4, 2024) (noting Consulate option in Reentry Permits section); *id.* at 3–4 (noting Consulate option in Refugee travel documents section). Plaintiff alleges that he filed the Form I-131 specifically for parole "to come back to the U.S." Doc. 1 ¶ 2. Form I-131 is also used for persons "outside the United States, [who are] applying for an Advance Parole Document." *Form I-131* at 2 ¶ 1.e. An advance parole document appears not to be eligible for mailing to a U.S. Consulate. *See Form I-131 Instructions* at 6–7 (no mention of Consulate option in advance parole document section).

33, ¶¶ 77–82 (Count 5 requesting a writ of mandamus because Plaintiff "*also* has a pending asylum application" (emphasis added)), *with id.* at 34 (Request for Relief focused entirely on Plaintiff's travel document and application).

In March 2022, Plaintiff filed a new Form I-131. Doc. 1 ¶ 48. At some point after the issue with Plaintiff's original travel document, USCIS instructed him to file a new Form I-131 "requesting re-parole and explaining the situation with the first approval and missing document." *Id.* ¶ 46. Plaintiff filed the new Form I-131 two months "before his parole expire[d]." *Id.* ¶ 47. The meaning of this allegation is unclear. The Court concludes that Plaintiff is saying he filed two months before the end of a one-year parole period authorized when his first Form I-131 application was granted. Plaintiff's first Form I-131 application was granted in May 2021, and he filed his second Form I-131 application in March 2022, two months short of one year later. Form I-131 instructions specify that persons who "need to remain in the United States beyond the authorized parole period . . . must file a new Form I-131 with all supporting documentation to request a new parole authorization and type or print REPAROLE in capital letters at the tops of the new Form I-131."[10]

In May 2024, USCIS transferred Plaintiff's case to ICE for lack of USCIS jurisdiction. *See* Doc. 1 ¶ 49–52. Specifically, USCIS transferred Plaintiff's application to the ICE humanitarian parole department because Plaintiff "has been subject to multiple final orders of removal and deportations." *Id.* at 26.[11] Plaintiff believes this was an error because "nothing changed after the first approved form." *See id.* ¶ 53. Plaintiff objects to USCIS "not [being] honest in saying what really happened with Plaintiff's travel document, [and] now [claiming not to have] jurisdiction . . . after 2 years and 2 months." *Id.* ¶ 55. The Court also infers that Plaintiff is frustrated because ICE already told him that humanitarian parole is not the proper mechanism for his case. *See id.* ¶¶ 57, 68 (Plaintiff "already

---

[10] *Form I-131 Instructions* at 7.

[11] The Court includes this information for clarity only. It is improperly alleged in a letter attached to the Complaint. If Plaintiff wants the Court to consider this information to evaluate his claim, he must include it in an allegation along with the other allegations.

- 7 -

exhausted [his options]" with ICE); *id.* at 28. In short,

> Plaintiff [believes] it is not fair to get an approval, then [not] receive the travel document, then be instructed to send [a] new application and then after being pending 2 years 2 months hear [that] USCIS [doesn't] have jurisdiction.

*Id.* ¶ 69.

Plaintiff urges five counts. In Count One, Plaintiff asks the Court to order USCIS to produce and mail the travel document approved in 2021. Doc. 1 at 30. In Count Two, Plaintiff asks the Court to order USCIS to review his 2022 application for re-parole "as they adjudicate[d] and approved the first application." *Id.* In Count Three, Plaintiff alleges "Defendants['] delay in excess of two years is unreasonable and therefore violates 5 U.S.C. § 555(b)." *Id.* at 31. In Count Four, Plaintiff alleges "Defendants have failed to issue work authorization to the Plaintiff for more than two years" in violation of "INA § 214(p)(6) and 5 U.S.C. § 555(b)." *Id.* at 32. In Count Five, Plaintiff asks the Court to order USCIS to grant Plaintiff's asylum application, which has been pending for three years. *Id.* at 33. Plaintiff also seeks relief in a page titled "Request for Relief." *See id.* at 34. He asks the Court to (1) order Defendants to provide Plaintiff with his travel document; (2) order Defendants to "adjudicate Plaintiff's application for RE-parole" and "comply with 8 C.F.R. § 21.14(d)(2) and place [Plaintiff] on the U Visa waitlist[] and provide him with an Employment Authorization Document"; (3) order Defendants to facilitate Plaintiff's entry to the United States; (4) award Plaintiff reasonable attorney fees and costs under 28 U.S.C. § 2412; and (5) award all other relief the Court "deems just, equitable, and proper." *Id.*

**IV.   Analysis**

As an initial matter, the Court construes the Complaint as attempting to state a claim under the Administrative Procedure Act ("APA"). Counts One, Two, and Five all refer to writs of mandamus. *Id.* at 30, 35. Counts Three and Four refer to 5 U.S.C. § 555(b), which is part of the APA. *See id.* at 31–32; 5 U.S.C. §§ 551–559 (agency procedures); 5 U.S.C. §§ 701–706 (judicial review of agency actions). The Ninth Circuit has recognized that the relief sought under the Mandamus Act and § 706(1) of the APA is "essentially the same." *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). So, "when a complaint

seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [a court] may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022). Considering the allegations in this case, the Court elects to analyze Plaintiff's claims under the APA only.

### A. Counts One and Two state a claim under the APA.

Here is Plaintiff's primary claim in a nutshell: he was approved for a travel document, never received it, reapplied, then waited two years to learn USCIS suddenly couldn't help. That is understandably frustrating. It also states a claim under the APA.

In Count One, Plaintiff seeks a writ of mandamus or injunctive relief "ordering USCIS to provide the Plaintiff's travel document" approved in 2021. *See* Doc. 1 at 30. He alleges that "USCIS failed in providing the Plaintiff with his travel document after he was approved for parole" and did not respond to his request for another copy. *Id.* ¶¶ 64–65. He also alleges that USCIS did respond at some point and told him to file a new application. *See id.* ¶ 46. In Count Two, Plaintiff asks the Court to order USCIS "to adjudicate [Plaintiff's] application for re-parole as they [adjudicated] and approved the first application." *Id.* at 30. The Court understands this as a request to order USCIS to act consistently and approve Plaintiff's second application for parole.

Under the APA, a reviewing court may "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). The arbitrary and capricious standard is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *See Ranchers Cattleman Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (internal quotations and citation omitted); *see also Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010). The court may reverse only when the agency has relied on impermissible factors, failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence, or is so implausible it could not be ascribed to a difference

in view or to agency expertise. *See Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 858 n.36 (9th Cir. 2003); *County of Los Angeles v. Leavitt*, 521 F.3d 1073, 1078 (9th Cir. 2008).

A reviewing court may also "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also* 5 U.S.C. § 555(b) (agencies shall conclude matters presented to them "within a reasonable time"). "[A] court may compel [delayed] agency action under the APA when the agency (1) has 'a clear, certain, and mandatory duty' and (2) has unreasonably delayed in performing such duty." *Vaz*, 33 F.4th at 1136 (citations omitted) (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)).

While courts have jurisdiction to review agency action if the agency has a mandatory duty, the APA prohibits review of an agency action if (1) a statute "precludes judicial review" or (2) "the agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Thus, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). USCIS has a mandatory duty to process Form I-131s, even if the outcome of its review is left to its discretion. *See, e.g.*, *M.J.L. v. McAleenan*, 420 F.Supp.3d 588, 596 (W.D. Tex. 2019) (concluding, in the context of U-visas, that "a discretionary decision to grant or deny an application is distinct and separate from the nondiscretionary duty to adjudicate those applications"); *Trinidad y Garcia v. Thomas*, 683 F.3d 953, 970 (9th Cir. 2012) ("Eligibility that was governed by specific statutory standards provided a right to a ruling on an applicant's eligibility, even though the actual granting of relief was not a matter or right under any circumstances, but rather is in all circumstances a matter of grace." (internal quotations omitted) (quoting *I.N.S.* v. *St. Cyr*, 533 U.S. 289, 307–08 (2001)); *Saini v. U. S. Citizenship & Immigr. Servs.*, 553 F. Supp. 2d 1170, 1173-1174 ("[T]he USCIS has a ministerial duty to take some action on immigration applications . . . .").

For determinations of whether agency delays are unreasonable under the APA, the Ninth Circuit has adopted the "*TRAC*" factors, a six-factor balancing test. *Telecomms.*

*Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"); *see Vaz*, 33 F.4th at 1137 (9th Cir. 2022). The factors are:
> (1) the time agencies take to make decisions must be governed by a "rule of reason";
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*TRAC*, 750 F.2d at 80 (citations and quotations omitted).

Liberally construed, the Complaint states a claim for arbitrary and capricious action as to Plaintiff's travel document applications. In 2021, USCIS approved Plaintiff for a travel document and mailed it to the U.S. Consulate but then did not respond to his requests for a new copy. Less than a year later, USCIS instructed Plaintiff to refile for a travel document, including information about what happened to the first. Plaintiff did so, and "nothing changed" between the applications or with respect to Plaintiff's situation. But despite the identical circumstances and application, the result was very different. USCIS did not process the second application for more than two years and then sent it to ICE for lack of jurisdiction. Accepting those allegations as true, which the Court must at this stage, USCIS's actions were arbitrary because they produced an inconsistent result under identical circumstances. Although improperly alleged, the letter Plaintiff attached—referring to Plaintiff's "multiple deportations and removals"—also suggests that USCIS's reason for transferring his case to ICE was counter to the evidence. Plaintiff says nothing changed between one application and the next. This begs the question why "multiple deportations and removals" would be an issue with the second application but not the first. Assuming the truth of Plaintiff's allegations, no reasonable basis exists for USCIS's decision.

The Complaint also states a claim for unreasonable delay. First, as explained above,

while USCIS has discretion over whether to approve an application for parole, it has a mandatory duty to make a decision. The delay in processing Plaintiff's I-131 is somewhat ambiguous. Plaintiff alleges his first I-131 was timely processed within one year but was never received. He alleges his second I-131 was not processed for just over two years. Under these circumstances, the period alleged as a delay could be as long as three years. Ultimately, Plaintiff was approved for a travel document in May 2021 and still has not received it over three years later. But the Complaint states a claim even if the period in question is restricted to the two-year delay alleged for the second application.

Though significant gaps appear in the allegations, liberally construed they state a claim under the *TRAC* factors. The first factor, which considers whether the time for agency action has been reasonable, is the "'most important' factor." *Vaz*, 33 F.4th at 1138 (quoting *Cmty. Voice v. EPA*, 878 F.3d 779, 786 (9th Cir. 2017)). Courts have repeatedly concluded that "a reasonable time for agency action is typically counted in weeks or months, not years." *Id.* (internal quotations omitted) (quoting *Nat. Res. Def. Council v. EPA*, 956 F.3d 1134, 1139 (9th Cir. 2020)). The delay in the processing of Plaintiff's I-131 has been between two and three years. As such, the first factor weighs in Plaintiff's favor. Further, taking the allegations in the complaint as true, the delay has both put Plaintiff's health and welfare at risk under the third factor and prejudiced him under the fifth factor. In Count V, Plaintiff claims that his "life is at immediate risk every day." Doc. 1 ¶ 80. Plaintiff supports this concern for his safety by indicating that he elected to have his travel document sent to the U.S. Consulate in Nogales because he had "no safer address" at which to receive the document. *Id.* ¶ 36. Plaintiff has been prejudiced by the delay because he has waited "two years and two months" for USCIS to process his second I-131 only to be denied due to lack of jurisdiction. *Id.* ¶ 69. Further, despite the transfer of Plaintiff's case to the ICE humanitarian parole department, ICE has already told Plaintiff that humanitarian parole is not the proper mechanism for his case, leaving him with no remedy. Plaintiff's allegations taken as true, USCIS unreasonably delayed processing Plaintiff's I-131.
///

**B. Counts Three, Four, and Five fail to state a claim.**

The Court will dismiss all other counts without prejudice for failure to state a claim. As discussed above, the Complaint is primarily focused on issues arising from Plaintiff's applications for a travel document. *See* Doc. 1 ¶¶ 2, 32–57, 63–69 (travel document allegations). After these allegations, the Complaint suddenly expands its claims to include an issue with his U-visa application, waitlist placement, work authorization, and asylum application. *See id.* ¶¶ 70–82 (adding U-visa, work authorization, and asylum allegations). If Plaintiff seeks relief for these issues, he must provide more detail about each of them so the Court can address them individually.

In Count Three, Plaintiff vaguely alleges unreasonable delay with respect to three or more actions. *See id.* ¶¶ 70–72. Paragraph 71 refers to Plaintiff's "[petition] for . . . U nonimmigrant status, Parole and waitlist placement." But a U-visa petition, advance parole document, and waitlist placement are each separate issues. Putting them together makes it impossible to evaluate this claim. Paragraph 72 adds that "Defendant's delay in excess of two years is unreasonable." This allegation further muddies the issues because it does not define *which* delay Plaintiff means. Plaintiff's U-visa petition may have been pending for much more than two years. *See id.* at 11 (prima facie determination made in 2018). Plaintiff's 2021 advance parole document application was timely processed, only Plaintiff never received the travel document. Plaintiff's 2022 advance parole document application was processed after two years and two months, but the result was unsatisfactory compared with the first application. And Plaintiff's waitlist placement is not alleged as an issue anywhere in the body of the Complaint. It is only mentioned in Count Three and in Plaintiff's Request for Relief. *See id.* at 31, 34. Given these issues, the Court determines that Count Three fails to state a claim.

In Count Four, Plaintiff states that "Defendants have an obligation to issue . . . work authorization for individuals who have presented bona fide petitions for U nonimmigrant status." *Id.* ¶ 74. Plaintiff further alleges that "Defendants['] failure to issue work authorization" violates the APA. *See id.* ¶ 76. The Complaint alleges no additional facts

about Plaintiff's application for work authorization. He does not say when it was submitted, whether USCIS issues work authorizations automatically after bona fide determination, or how authorization to work in the United States could be issued given Plaintiff's other allegations that he is in Mexico and does not have permission to enter the United States. Thus, Plaintiff's allegations as to work authorization fail to state a claim.

In Count Five, Plaintiff asks the Court to "provide the Plaintiff access to the U.S. [because he] also has a pending asylum application." Doc. 1 ¶¶ 77–82. The Complaint alleges no additional facts about Plaintiff's asylum application beyond stating that his "life is at immediate risk every day" and "it's a clear USCIS mistake." *Id.* ¶¶ 80–81. These allegations are too vague to raise Plaintiff's right to relief "above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted). They therefore fail to state a claim.

### C. The Complaint also fails to state a claim against most defendants.

The Court will also dismiss the following defendants without prejudice: USCIS Parole Operations Director Leigh, USCIS Vermont Service Center Director Zuchowski, USCIS Service Center Operations Director Nolan, USCIS Associate Director Kim, USCIS Nebraska Service Center Director Miller, and U.S. Department of State Director of Foreign Assistance Dr. Carson. The Complaint makes no specific allegations about these defendants or explains how they are related to this action. The Court's research discovered that Vermont and Nebraska process U-visa applications, but the Complaint does not allege that these locations exercise discretion not attributable to USCIS generally. The Complaint therefore fails to state a claim against these defendants.

The Court will also dismiss Defendant Staab, an employee of the U.S. Consul in Nogales, Mexico, and USCIS Ombudsman Stiefel. Plaintiff alleges Staab "did not [know] that [Plaintiff] could request his travel document to be sent to the [U.S.] Consulate in Nogales as the … safest place to receive the document and as a valid option that the USCIS Form I-131 Application for a travel document offers." Doc. 1 ¶ 18. In what appears to be a related allegation, Plaintiff states that, when he went to the Consulate to pick up his travel

document,

> Plaintiff was told that it was disrespectful to request USCIS to use the U.S. Consulate address to receive personal mail, like the Plaintiff decided by his self, they didn't know that it was an option for the Plaintiff to receive the document there. In other words they don't know the Form I-131 and what is the [purpose] for it.

*Id.* ¶¶ 38–39. Plaintiff further alleges he "[believes] that the [travel document] was never mailed [to the Consulate by USCIS]." *Id.* ¶ 45. These allegations fail to state a claim because they do not allege a violation of the law, only unfamiliarity with a USCIS form. Similarly, Plaintiff alleges only that Ombudsman Stiefel "mentioned that [his 2021 travel document] was mailed." *Id.* ¶ 43. That is, similarly, insufficient grounds for a claim. The Court will dismiss Defendants Staab and Stiefel accordingly.

**V.     Leave to Amend**

Plaintiff now has two options. The first option is to move forward and serve Defendants Garland, Jaddou, and Mayorkas. The second option is to amend the Complaint. If Plaintiff chooses to amend his Complaint, he is advised to consider the following:

First, an amended complaint completely replaces the original complaint. The original complaint effectively ceases to exist. That means a plaintiff should be careful not to leave out any important allegations from the original complaint when drafting an amended complaint.

Second, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a *short* and *plain* statement showing entitlement to relief. The Complaint is 35 pages and contains a significant amount of legal background. *See, e.g.*, Doc. 1 ¶¶ 19–26, 28–31. That is not the purpose of a complaint. A complaint should primarily state facts. Only with facts—as detailed and clear as possible—can the Court determine how the law applies. The Court does not need Plaintiff's help to understand or apply the law at this stage. That is the Court's job for now. If the case proceeds, there will be opportunities for Plaintiff to present legal arguments later. A complaint is not one of those opportunities.

Finally, a plaintiff should avoid attaching evidence to a complaint. *See, e.g.*, *id.* at 11, 14–28. The Court accepts a complaint's allegations as true. There is no need to prove

them at this stage. Any important information contained in evidence—such as letters Plaintiff received—should be written into a complaint in the form of allegations. The Complaint does that well in a few sections. *See id.* at 12–13. If Plaintiff amends, he should follow his own example from those sections.

**IT IS ORDERED:**

**(1)** Plaintiff's Application for Leave to Proceed In Forma Pauperis (Doc. 2) is **granted**.

**(2)** Counts Four, Five, and Six are **dismissed without prejudice**.

**(3)** Defendants Leigh, Zuchowski, Nolan, Kim, Miller, Stiefel, Stabb, and Carson are **dismissed without prejudice**.

**(4)** The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and summons forms for Defendants Garland, Jaddou, and Mayorkas.

**(5)** Within 90 days of the filing of the Amended Complaint or within 60 days of the filing of this Order, whichever is later, Plaintiff must either obtain waiver of service of the Summons or complete service of the Summons. If Plaintiff fails to obtain waiver of the Summons or complete service of the Summons, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); L.R. Civ. 16.2(b)(2)(B)(ii).

**(6)** Upon receipt of the service packet, the Clerk of Court must send by certified mail a copy of the Summons, the Complaint, and this Order to (1) the civil process clerk at the office of the United States Attorney for the District of Arizona; (2) the Attorney General of the United States, pursuant to Rule 4(i)(1) of the Federal Rules of Civil Procedure; (3) Merrick Garland; (4) Ur Jaddou; and (5) Alejandro Mayorkas.

**(7)** Defendants Garland, Jaddou, and Mayorkas **must respond** to Counts One and Two of the Complaint within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**(8)** Any answer or response must state the specific Defendant by name on whose behalf

it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

Dated this 12th day of September, 2024.

_____
John C. Hinderaker
United States District Judge